GARDEN, JUDGE:
Claimant Thelma E. McIntyre brought this claim as the administratrix of the estate of Wilma S. McIntyre.
Claimant’s decedent, Wilma S. McIntyre, was admitted to Weston State Hospital on July 10, 1974. She was taken to Weston State Hospital by Harrison County deputy sheriffs in response to a request from the Veterans Hospital in Clarks-burg, West Virginia. The decedent exhibited symptoms of mental illness which she had suffered in the past prior to previous commitments to institutions for mental health treatment.
The first night at Weston, the decedent was placed in Ward 8, an area with barred windows and locked doors. The next day, July 11, 1974, the claimant spoke with the decedent’s psychiatrist at Weston, Dr. Castillo, advising him to keep the decedent in a restricted area. Later that same day, the claimant, her husband, and her niece (the daughter of the decedent) went to visit the decedent. She had been transferred to a crisis intervention unit (CIU), where there were no bars on the windows and no locks on the doors. The window in the decedent’s room had a screen on it which latched with one hook and eye. The decedent recognized the claimant, claimant’s husband, and her daughter. The claimant was contacted at approximately 1:45 a.m. on July 12, 1974, *210 by Dr. Castillo, who advised the claimant that the decedent had fallen through the window in her room and was being taken by ambulance to West Virginia University Hospital in Morgantown, West Virginia.
The decedent was paralyzed from the neck down as a result of sustaining a broken neck in the fall through the window at Weston and died from these injuries on August 14, 1974.
Claimant alleged that the respondent was negligent in its failure to place the decedent in an appropriate ward, considering her mental condition.
The evidence reveals that the decedent had suffered from mental illness for many years, requiring commitment to mental health institutions at various times for various periods. The claimant had, in fact, been a patient at Weston State Hospital in 1943 for approximately 14 months. Her case history revealed the mental problems from which she suffered. Before being taken to Weston on July 10, 1974, the decedent had been examined by Dr. Jaime E. Lazaro, who had stated on the “Certificate of Physician” form the following: “Wanders off home. Travels country. Very disorganized, delusional, irrational. Talks about the dead and wants reunion with the dead. Incompetent, dangerous to self - psychotic.” According to a report compiled by Dennis Bridgeman, Administrative Assistant II, and Peggy Allman, Psychologist II, employees of Weston, the decedent was interviewed by social worker Roger Belknay on July 11, 1974. Mr. Belknay determined that she met the criteria for admission to the Crisis Intervention Unit, and she was transferred to the CIU at that time. Both teams of Unit II (Ward 8) and CIU approved of this transfer. The report also contained the written statement of Kathleen Cottrill, Aide II on CIU, who had been on duty the night of the decedent’s fall. Her statement indicated that the decedent did not seem disturbed or upset; that she requested that she not be given her H.S. Medication (a sleeping inducement medication) ; and that she appeared to be sleeping well. She last checked the decedent at 11:15 p.m. The statement continues as follows:
*211 “I was getting ready to leave the ward when I heard a noise, the aide (on midnight) and I rushed to Wilma, she was lying on her back on the ground, I asked her what happened, and she said she thought she was at a door, instead it was a window and she fell. In my honest opinion, I do not think the woman jumped from the window. I believe she mistook the window for a door, and was leaning out to see where she was, and lost her balance.”
Whether the decedent fell from the window or jumped from the window is a matter of speculation. The fact that the decedent was a patient in the care of the respondent created a burden upon the respondent to take reasonable precautions to prevent the decedent from doing harm to herself. Under the circumstances of the case, that should have included placing the patient in wards with more adequate safeguards. In the instant case, the decedent was placed in a ward without adequate consideration being given to her past mental history. The respondent failed to adequately protect the decedent when she was placed in a ward where there were no bars on the windows.
The Court concludes that the respondent failed to fulfill its moral and legal obligation to protect the claimant’s decedent; that the respondent’s acts constituted negligence; and, that such negligence was the proximate cause of the death of claimant’s decedent. House v. Dept. of Mental Health, 10 Ct.Cl. 58 (1974).
The decendent’s estate wás responsible for the hospital bill of $3,538.56 incurred while decedent was a patient at the West Virginia University Medical Center; the funeral bill of $1,786.23; and the cost of a grave marker of $302.51, for a total of $5,627.30.
The Court is of the opinion to and does hereby award to the claimant, Thelma E. McIntyre as administratrix of the estate of Wilma S. McIntyre, decedent, the sum of $10,000.00, with the additional sum of $5,627.30 for expenses incurred by the estate, a total of $15,627.30.
Award of $15,627.30.